UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 14-10051 |
| LAMAR JACKSON, | ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION**

This matter is now before the Court on Defendant Lamar Jackson's ("Defendant") Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). ECF No. 205. For the reasons stated below, his Motion is DENIED.

**BACKGROUND**

On May 23, 2014, Defendant was charged with conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846, 841(a)(1)(b)(1)(C). ECF No. 1. On November 9, 2016, Defendant pled guilty pursuant to a written plea agreement and was sentenced for a term of time served and six years of supervised release. ECF No. 129; Docket Entry 11/09/2016. On June 29, 2018, a request for modification was filed due to alcohol substance abuse issues while on supervised release. ECF No. 156. On August 24, 2018, Defendant was placed on home confinement for fifty days and ordered not to consume alcohol as a condition of his supervised release. Docket Entry 08/24/2018. On October 25, 2019, a petition to revoke his supervised release was filed based on a positive drug test for cocaine. ECF No. 172. On October 28, 2019, Defendant was released on bond and began outpatient treatment at the Human Service Center. Docket Entry 10/28/2019. On January 14, 2020,

1

Defendant admitted violating the conditions of his release, but the sentencing was continued until April 21, 2020, to see if Defendant could continue making progress toward sobriety. Docket Entry 01/14/2020. On January 22, 2020, a supplemental petition was filed alleging that Defendant used cocaine in December 2019. ECF No. 187. Defendant was detained but released again on bond on January 27, 2020. Docket Entry 01/27/2020. On July 13, 2020, Defendant admitted to violating the terms of his supervised release, and this Court sentenced him to twelve months in the Bureau of Prisons with no further supervised release to follow. Docket Entry 07/13/2020. Defendant is incarcerated at the Federal Correctional Institution ("FCI") Pekin in Pekin, Illinois. ECF No. 201 at 1. His scheduled release date is September 6, 2021. *Id*.

On January 28, 2021, Defendant filed a *pro se* Motion for Compassionate Release. ECF No. 200. The Court appointed the Federal Public Defender ("FPD") to represent him. On February 14, 2021, the FPD filed an Amended Motion for Compassionate Release. ECF No. 205. On February 22, 2021, the Government filed a response. ECF No. 206. This Order follows.

### LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction

would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. "Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding

the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

### I.     Exhaustion of Administrative Remedies

Defendant submitted a request for compassionate release to the Warden at FCI Pekin. On December 23, 2020, the Warden denied his request. ECF No. 205-2. Therefore, Defendant exhausted his administrative remedies before filing a Motion for Compassionate Release. *See* 18 U.S.C. § 3582(c)(1)(A).

### II.     Eligibility for Compassionate Release

**A.     FCI Pekin**

Currently, there are no inmates and eight staff members at FCI Pekin who are positive for COVID-19. Seven hundred and ninety-four inmates and seventy-one members have recovered from the virus. There have been no inmate deaths. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 23, 2021).

Defendant states that FCI Pekin has been hit especially hard with COVID-19 as over 850 inmates and staff have been infected. ECF No. 205 at 7. According to the Government, the "BOP has taken significant measures to protect the health of the inmates in its charge." ECF No. 206 at 7. The Court recognizes that an outbreak could still occur despite these safety measures, but the mere existence of the COVID-19 pandemic alone does not provide a basis for a sentence reduction. If it did, every inmate would be released. *See Melgarejo*, 2020 WL 2395982, at *5.

**B.     Defendant's Medical Condition**

Defendant suffers from high blood pressure and takes medication to control it. ECF No. 205 at 7. He is 5'8" tall, weighs 266 pounds, and has a BMI of 40. *Id*. Defendant also has mental health issues, including anxiety, bipolar, and schizoaffective disorders. ECF No. 206 at 14. As of

January 29, 2021, his mood was described as stable, with no hopelessness, helplessness, or suicidal thoughts. *Id*. Defendant has already contracted COVID-19 but did not experience severe symptoms. ECF No. 205 at 6. He suffered loss of taste and smell and experienced severe headaches for a time. *Id*. Defendant fears contracting the virus again. *Id.*

The Government acknowledges that Defendant's hypertension and obesity are conditions which increase his risk for severe illness from COVID-19; however, the Government notes that Defendant already contracted the virus and recovered. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 24, 2021). The Government argues that Defendant's Motion should be denied because the mere existence of the COVID-19 pandemic does not meet the criteria of the Sentencing Commission's policy statement as an extraordinary and compelling reason for release. ECF No. 206 at 12.

The Court finds that Defendant has established extraordinary and compelling reasons for a reduced sentence based on his chronic health conditions, which increase the risk for severe illness from the virus, as well as the significant number of positive cases there has been at FCI Pekin. That being said, the Court may also consider whether a reduction is warranted under the factors listed in 18 U.S.C. § 3553(a).

**C.      Consideration of the § 3553(a) Factors**

Defendant argues his sentence should be reduced to time served so that he can resume his efforts to become a productive citizen. ECF No. 205 at 8. Defendant notes that he was sentenced to prison for his illegal use of cocaine on two occasions, and although there were other incidents while he was under supervised release, there is rarely a straight progression to sobriety

6

for those who suffer with addiction. *Id*. at 7-8. According to Defendant, he has several positives going for him that others in his shoes do not, such as a high school diploma, a home, and a job waiting for him at Pizza Hut. *Id*. at 8. Moreover, he is currently medicated at FCI Pekin for his mental health issues and was medicated while on supervised release. *Id*. Although he has had minor domestic struggles and issues with resisting arrest in the past, Defendant states that he has no history of carrying or using firearms. *Id.* Defendant has not had any disciplinary incidents while incarcerated at FCI Pekin and is deemed a medium risk for recidivism. ECF No. 201 at 2. The Government argues Defendant's Motion should be denied because his history and characteristics establish that his release is unwarranted under the factors listed in § 3553(a). ECF No. 206 at 15. In this case, the Government argues that Defendant received a very large break as he was allowed to enter the Pretrial Alternatives to Detention Initiatives Program ("PADI") program. *Id*. After completion of the PADI program, he received a time served sentence; however, less than two months after being placed on supervised release, Defendant was arrested for obstructing an officer, driving with a suspended license, operating an uninsured motor vehicle, and failure to reduce speed to avoid an accident. *Id*. Subsequently, Defendant tested positive for cocaine metabolite and later admitted to using cocaine. *Id*. at 16. On the recommendation of the Probation Office, no action was taken on the violations. *Id*. Thereafter, Defendant completed the ELITE Re-Entry Job Readiness Program. *Id*. On June 17, 2018, Defendant was intoxicated and took a security officer's phone. *Id*. On August 24, 2018, the Court modified the conditions of supervised release to prohibit Defendant from consuming any alcohol and to submit to 50 days' home monitoring. *Id.* Unfortunately, Defendant's attendance at substance abuse recovery treatment meetings was inconsistent. ECF No. 180 at 4. On July 14, 2020, Defendant's supervised release was revoked for another possession and use of cocaine and he was sentenced to twelve months' in the BOP. ECF

No. 206 at 16. The Government contends that based on the foregoing criminal history and conduct on supervision, Defendant's Motion should be denied.

The Court finds that Defendant's history and characteristics do not favor a reduced sentence. The Court gave Defendant numerous opportunities since the original offense in 2014 — from avoiding a lengthy prison sentence to approving several rehabilitation programs. Nonetheless, Defendant continued to violate the terms of his supervised release on various occasions, and therefore, is serving a term of incarceration based on a revocation of his supervised release. While Defendant has only about six months remaining on his sentence, the Court finds that Defendant has not shown extraordinary and compelling reasons to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Waiving the remainder of Defendant's sentence would not promote respect for the law, reflect the seriousness of the offense, or provide adequate deterrence. Although the United States Probation Office found Defendant's release plan to be suitable, there is a concern regarding his return to the residence where he was living while on supervised release due to his previous struggles to maintain compliance with the Court-ordered conditions, which ultimately led to his supervised release being revoked. *See* ECF No. 201 at 2. As such, a sentence reduction is not warranted under the § 3553 factors, and his Motion is DENIED.

## Conclusion

For the reasons stated above, Defendant's Amended Motion for Compassionate Release [205] is DENIED and his *pro se* Motion for Compassionate Release [200] is MOOT.

ENTERED this 3rd day of March, 2021.

s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge